## GIFFORD v. MEYERS ET AL.

[No. 3,171.   Filed October 4, 1901.]

LANDLORD AND TENANT.—*Farm Lease.—Crops.—Ownership.—Conversion.*—A farm lease provided that the tenant should pay a certain price per acre for rent of land not tillable, and for his services in cultivating the tillable land he was to receive two-thirds of the grain raised, his right to ownership to any portion thereof not to accrue until the grain was measured and the landowner's part delivered and settlement made of the cash rent. *Held,* that such contract was lawful, and that the land owner may treat a sale of grain by tenant, before division and settlement, as a conversion and recover therefor from the purchaser.

From Pulaski Circuit Court; *G. W. Beeman,* Judge.

Action by Benjamin J. Gifford against H. A. Meyers and others for conversion. From a judgment for defendants, plaintiff appeals. *Reversed.*

*B. F. Ferguson* and *J. E. Wilson,* for appellant.
*Burson & Burson,* for appellees.

BLACK, C. J.—The appellant sued the appellees to recover damages for the conversion of a specified number of bushels of corn alleged to be the property of the appellant. There was an answer of general denial, and upon the trial before a jury, at the close of the evidence introduced by the appellant and without the introduction of evidence by the appellees, the jury by the direction of the court returned a verdict for the appellees. The appellant's motion for a new trial was overruled.

The corn was raised upon certain tracts of land owned by the appellant in Jasper county, and was purchased and received by the appellees, dealers in grain at Francisville, Pulaski county, from Alonzo Catterline and three other persons, each of whom had raised the corn so disposed of by him under a written contract between him and the appellant. The written agreements were severally executed in the au-

tumn of the year 1897, and were alike except as to the names of the parties thereto who cultivated the lands and as to the descriptions of the several tracts. They were quite lengthy and contained much matter which need not be recited for the illustration of the controlling question. The agreement between the appellant and Alonzo Catterline provided, among other things, that the appellant, in consideration of "the payment of the rent and the observance and faithful performance of the terms of the agreement as herein set forth, does hereby lease to the said party of the second part, for a period commencing first day of February, 1898, and ending the first day of February, 1899, the following described real estate, to wit, the house, barn, and other buildings, and all lots used in connection therewith, together with any orchard and tame grass meadow or pasture land, which may be situated on the following described farm." Here follows a description of a number of subdivisions of a certain section of land in Jasper county. "It is agreed between the parties that the buildings and premises are in good repair, and the party of the second part agrees to keep and maintain the same in like good repair and surrender the same in such condition upon the termination of said term. The lease is made subject to the payment of the party of the second part of the following rent, to wit, $1.50 per acre for all grass, pasture, and meadow, house or barn lots, garden, truck patch or orchard, on the first day of February following the date of this contract, and the payment, on the said day, of seventy-five cents per acre for all lands plowed on said premises during the preceding fall by one other than himself and not seeded, and the further payment of $2 per acre for all land seeded to fall wheat or rye, in satisfaction of work so done and seed supplied, and the further sum of thirty cents per bushel for all seed corn delivered to him by the preceding tenant; and that he shall at all times keep and perform faithfully the terms of the following agreement; and any failure to pay said sums of money or either of them, or so to keep

and perform any of the terms of this agreement, shall operate as a forfeiture of the rights of the said party of the second part hereunder, and this term may in that event be declared ended at the option of said party of the first part, who shall thereupon, after ten days' notice thereof, have the right of possession and the right to maintain forcible detainer for the recovery thereof, and no other or further notice shall in any case be necessary; or the party of the first part may, at his option, procure any work to be done which the party of the second part agreed to do and failed to perform, and charge the said party of the second part therewith, and which charge the said party of the second part hereby agrees to pay. It is further agreed, however, that the said party of the second part may, at his own expense, convert into tillable land any tame grass meadow, pasture or lot; and in that case shall be rebated any rent paid therefor, he cropping such land on the same terms as other tillable land and as hereinafter mentioned. And in consideration of the leasing of said premises and as part rent therefor, the said party of the second part agrees that he will farm for the said party of the first part all tillable land on the tract above described as below set forth, or as he may be directed, and work thereon seven horses or mules with proper hands, and will furnish all hands, teams, harness, wagons, tools or implements and seed and feed therefor, which tools shall embrace, among other tools, one stirring plow, one sod plow, one disk harrow, one steel-tooth harrow, one seeder, one planter, and for each two-horse team one gopher or disk cultivator." Here followed stipulations as to the character of the plowing, planting, and cultivating, and as to the kinds of crops, with many particulars as to the manner of carrying on the work. It was provided that for plowing and planting land never before plowed, the party of the second part should be paid $1 per acre, and a like sum for plowing after the time for seeding had passed should be paid at the end of the term; that he would furnish all seed for the land of the

variety approved by the party of the first part; that should a crop other than corn, oats, wheat, or rye be raised on the land without permission, the party of the second part, at the election of the party of the first part, should pay for such land at the same rate as for tame grass meadow and in that event should have such entire crop.  The party of the second part agreed to thresh the oats, wheat, or rye on or before September 1st, and to haul at least three loads of such grain, should there be that amount, directly from the machine "to the headquarters farm of the division in which said farm may be situated, or nearest railroad station, as requested, where the same shall be weighed and delivered to the party of the first part, and the remainder thereof to same place, or at least enough to give the party of the first part his full share under this contract, and enough to pay any indebtedness of the party of the second part, as soon thereafter as practicable; that the party of the second part will plow all stubble ground during the month of August, at least five inches deep, and in default agrees to pay the party of the first part, on the first day of December of said term the sum of seventy-five cents per acre for all stubble land not so plowed, unless prevented from plowing by extreme drouth." It was agreed that the party of the second part should husk the corn and haul it "to the aforesaid delivery place"; that he should complete the husking and delivery of the corn before December 1st; and should a default be made herein, the party of the first part might, at his election, procure any remaining corn to be delivered at the expense of the party of the second part, or to be estimated by him or his superintendent either in the field or crib.  "And when any kind of grain is measured on said premises for the purpose of ascertaining the amount, in order that the parties' rights may be fixed and determined, the party of the second part shall be charged as the custodian thereof with the amount of such measurement, and shall hold the same subject to the rights of the parties so ascertained; but his right of ownership to

any portion thereof shall not accrue until he shall have delivered the entire portion belonging to the said party of the first part at the place aforesaid of any particular kind of grain and paid any debt or balance due the party of the first part. * * * No grain so raised shall be moved to any place other than as above provided, until division shall be made and the share of the party of the first part has been delivered and all accounts settled, without the authority in writing from the party of the first part. * * * It is agreed by and between the parties that the said party of the first part shall redeliver at the place aforesaid to the party of the second part in full payment for the foregoing labor and tools, teams and seed, etc., furnished, two-thirds of all grain grown on said land, less such amount the value whereof at current prices shall equal the amount of any rent unpaid and all other sums of money whatsoever, and also less any amount of grain which said party of the second part may have raised on said premises and failed to deliver at said place, and any gain which he may have sold to the said party of the first part, subject, however, to a reasonable storage charged after thirty days, provided, that when said grain may be sold to the party of the first part, no storage charge shall be made," etc.

Reference has been made in argument to the following provision in our statute relating to landlord and tenant (§7105 Burns 1894, §5224 Horner 1897): "In all cases where a tenant agrees to pay, as rent, a part of the crop raised on the leased premises, or rent in kind, or a cash rent, the landlord shall have a lien on the crop raised under such contract for the payment of such rent; which lien, if the tenant refuse or neglect to pay or deliver to the landlord such rent when due, may be enforced by sale of such crop, in the same manner as the lien of a chattel mortgage containing a power to sell: Provided, that nothing herein contained shall prohibit the tenant, after notice in writing to the landlord or his agent, from removing from such leased prem-

ises his own part of said growing crop, and no more than such part, and from also disposing of the same whenever the rent is to be paid in part of the crop raised; but in other cases, he may remove not more than one-half of the crop growing or matured."

This provision can not properly be regarded as applicable to the case at bar. Certain portions of the tracts on other portions of which the corn in question was raised were demised, and these portions are carefully distinguished in the contracts from the tillable lands. The persons to whom the portions not tillable were so demised were tenants as to those portions. They were to pay cash rent and to render service by cultivating the tillable lands, and for the service so rendered they were to receive from the landowner two-thirds of the produce of the tillable lands less the quantity equaling at current prices the amount of cash rent remaining unpaid and the amount of advances made to them by the landlord, which he was to retain, also the other one-third of the crop. The landowner was to redeliver the grain in payment for labor, etc. By the provisions of the contracts, the ownership of all the corn raised was to remain in the landowner. The tenant was not to pay for the tillable land in part of the crop; but the landowner was to pay the tenant in part of the crop, all of which belonged to the landlord, the delivery to whom of the one-third part of the gross produce did not, without his consent, devest him of his ownership of the remaining two-thirds, at least until the adjustment and satisfaction of his claims for cash rent and advancements made under the contracts.

Such an agreement was not unlawful. The parties to the contracts having agreed upon such a lawful use and disposition of their property and services, their contracts should be applied according to their intentions as gathered from the terms of the agreements. If under such construction the corn in question was still the property of the appellant when

sold by the tenants without his consent to the appellees, he was entitled to treat the transfer as a conversion.

There was evidence tending to prove that the contracts never were recorded, and that the appellees were notified by the appellant's agents that the tenants who sold the corn to the appellees were indebted to the appellant, and that the appellees were warned by the appellant's agents not to buy the corn; also that the appellees at the time of the trial had not yet paid the tenants for the corn. Evidence concerning such matters could not affect the right of the appellant to recover for the conversion of his property.

The construction which we have thus given to the contracts renders it unnecessary to recite and discuss the various grounds of the motion for a new trial dependent upon the construction of the written instruments.

The judgment is reversed, and the cause is remanded for a new trial.